IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **FOREMOST FARMS USA, COOPERATIVE** | )<br>)<br>) |
| Plaintiff, | ) Case No. 3:20-CV-911 |
| v. | )<br>) |
| **DAIRY FARMERS OF AMERICA, INC.** | )<br>) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Foremost's lengthy opposition brief is notable for what is missing: it contains no denial of the fact that Foremost, on both September 15 and September 23, told DFA that Foremost had "no interest in litigation," and yet Foremost proceeded to file this declaratory judgment action just days after those inaccurate statements, and just 48 hours before DFA said it would file suit for breach of contract. There is only one plausible explanation for Foremost's conduct. It was an attempt to gain improper advantage by depriving DFA, a Kansas headquartered company, of its right to sue for breach of contract in the forum of its choosing: the District of Kansas. This case presents the paradigmatic anticipatory-filing situation, and the Court should dismiss this action so as to satisfy the purposes behind the law disfavoring procedural gamesmanship.

Foremost offers no compelling reason to save this action from dismissal. Instead, nearly all of Foremost's opposition is spent "responding" to arguments DFA has not made. Foremost relies mostly on the factors that courts consider under 28 U.S.C. § 1404(a) in determining whether to transfer venue. DFA, of course, has not moved to transfer venue. DFA already has its proper "coercive" breach-of-contract lawsuit on file in the District of Kansas, and DFA is simply asking this Court to dismiss this improper declaratory judgment action so that it is not wastefully proceeding in parallel to DFA's full damages-seeking claims (where Foremost will

602677020.7

properly be permitted to raise the breach-of-contract defenses it has attempted to address by declaration here). As the caselaw set forth below shows, the Court need not and should not consider any of the Section 1404(a) factors where, as here, the illegitimate and anticipatory nature of the declaratory filing is clear. Even if the Court were to consider the Section 1404(a) factors, however, they would not warrant favoring this declaratory action over DFA's coercive action in Kansas because DFA's key witnesses are located in Kansas, Foremost has failed to show that any witnesses will be unable to participate in a Kansas action, and the state laws potentially in play in this case are all uniform.

DFA urges the Court to dismiss this action, and to award DFA its attorney's fees in accordance with the parties' contractual fee-shifting provision.

## ARGUMENT

**I. THE COURT SHOULD DISMISS FOREMOST'S DECLARATORY ACTION AS AN IMPROPER ANTICIPATORY FILING, SO AS TO REMEDY AND CURB FOREMOST'S PROCEDURAL FENCING.**

**A. The Facts Show Foremost's Action to Be Procedural Gamesmanship.**

Nothing in Foremost's opposition controverts the factual circumstances showing that this matter is an improper anticipatory filing. In weighing whether a declaratory judgment action is an improper anticipatory filing, the Court should look to whether the action was filed "under threat of an imminent suit and assert[s] the mirror-image of that suit in another district." *OMC LLC v. S&E Gourmet Cuts, Inc.*, No. 16-CV-833-WMC, 2017 WL 3484964, at *4 (W.D. Wis. Aug. 14, 2017) (quoting *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004)). "Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." *Schwarz*, 317 F. Supp. 2d at 833.

Here, Foremost does not meaningfully dispute the facts demonstrating that this action is an improper anticipatory filing.  In the Davis declaration (Dkt. 9), DFA established that (1) DFA and Foremost were discussing the possibility of settlement; (2) DFA informed Foremost that it would file suit by October 2; (3) Foremost twice indicated to DFA that it was not interested in litigation, first on September 15 and then again on September 23; and (4) just seven days later, and two days before the date on which DFA indicated it would file suit, Foremost filed this suit despite its prior representations that it had no interest in litigation.  (*See* Dkt. 9.)

While Foremost declares in its opposition that there is no indication of bad faith or procedural fencing, the undisputed facts show otherwise.  In a declaration from counsel, Foremost does not deny that it indicated to DFA on both September 15 and 23 that it was not interested in litigation. (Dkt. 12 at 1-2.)  And, as to DFA's threats to imminently file suit, Foremost's declaration cleverly attempts to side-step the reality that DFA told Foremost it would file suit, claiming in a declaration from counsel that DFA "never threatened to institute legal action against Foremost *in the District of Kansas*, or by a particular date" (emphasis added).  This seems to be a somewhat masked way of admitting that DFA did indeed threaten to file suit, albeit not with respect to any particular forum.  As to Foremost's suggestion that DFA never threatened to file "by a particular date," it is unclear if Foremost is attempting to split hairs or otherwise rely on some nuanced interpretation of the words DFA used.  Either way, Foremost could have outright denied DFA's declaration indicating that DFA told Foremost on September 21 that "DFA may well feel compelled to institute legal action by October 2, 2020."  It is telling that Foremost did not do so.

Even assuming DFA had not threatened to file on a particular date (it in fact did), the remaining uncontroverted facts (that DFA generally threatened to file suit, and that Foremost

3

twice suggested it had no interest in litigation and then filed suit days later) nevertheless present the very type of anticipatory filing that is discouraged by federal courts.

Foremost suggests in a footnote that DFA's reliance on this Court's authority in *OMC LLC v. S&E Gourmet Cuts* is misplaced because *OMC* involved specific factual circumstances showing that plaintiff's declaratory judgment action was a tactic to preempt the threatened suit. (Dkt. 10 at 22 n. 11.)  *OMC*, however, is nearly identical to this case because, just as in *OMC*, Foremost's action here plainly was intended to preempt DFA's lawsuit and deprive DFA, the true plaintiff, of its choice of forum.  DFA told Foremost it would file suit by a certain day, Foremost twice misrepresented that it had no interest in litigation, and then ran into court just 48 ahead of DFA's indicated filing date, with a non-coercive declaratory-judgment action that raises only a sliver of the parties' overall dispute.  This is exactly what happened in *OMC*.  *See* 2017 WL 3484964, at *4 ("[A] finding that OMC's filing of this declaratory judgment action was a blatant tactic to jump the line of Country Archer's threatened infringement lawsuit in the Central District of California would provide an independent, compelling reason for the court to decline to hear this case . . . .").

Finally, Foremost's repeated reliance on the first-to-file rule belies its contention that its action was not an (improper) attempt to file first to secure the venue it wanted but merely an innocent declaratory judgment action filed in an appropriate venue.  If this were truly the case, Foremost would have waited at least a few more days to see whether DFA would in fact file suit on October 2 as threatened, and then, if the suit was filed in an "inconvenient" forum, move to transfer under Section 1404.  There was nothing urgent about Foremost's declaratory judgment action, and most parties do not, when faced with an adversary threatening claims against it, want to rush into court and guarantee that it must defend against the claims being threatened.  By scrambling to bring suit with DFA's deadline for resolution quickly approaching, and by arguing

4

602677020.7

that it is entitled to forum preference as the first to file, Foremost reveals this action for what it is: A blatant attempt at improper forum shopping.

If this case does not present an improper anticipatory filing worthy of dismissal, one struggles to think what sort of conduct would warrant dismissal. DFA submits that the Court should not reward this sort of gamesmanship.

**B. Foremost Improperly Conflates DFA's Motion to Dismiss with a Motion to Transfer.**

In an attempt to distract from the undisputed facts demonstrating its improper anticipatory filing, Foremost suggests that DFA's motion to dismiss should be reconfigured into a motion to transfer. (Dkt. 10, at 11 n. 2.) Despite this effort, Foremost points to no case law that suggests dismissal of this action is improper or that dismissal requires a transfer analysis.

The Seventh Circuit recognizes an exception to the first-to-file rule when a party brings a declaratory judgment action in anticipation of the other party bringing suit to obtain a coercive remedy. *See Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749–50 (7th Cir. 1987) (applying the first to file rule to a motion to dismiss without considering the transfer statute); *see also OMC LLC*, 2017 WL 3484964, at *4 (holding that a blatant anticipatory filing is an "*independent compelling reason*" for a court to decline to hear a declaratory judgment action (emphasis added)). Foremost fails to point to any law that contradicts this settled principle or shows that any additional factors should be considered given the procedural posture of this case. Indeed, a Court may grant a motion to dismiss an anticipatory declaratory judgment action without addressing a plaintiff's arguments regarding venue. *Eli's Chi. Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 909 (N.D. Ill. 1998). This is because when considering a motion to dismiss, the issue of venue is not before the Court. *Id.* Instead, "venue arguments should be addressed in a 1404(a) motion to transfer filed in the [other] court." *Id.*

5

Foremost is mistaken in relying on *Placon Corp.* and *Mullinix Packages, Inc.* for the proposition that whether or not a suit is an improper anticipatory filing is only one factor in a larger transfer analysis.  Neither of these cases invokes Seventh Circuit precedent and both *Placon* and *Mullinix* rely on Federal Circuit precedent because they concern patents.  *Placon Corp. v. Sabert Corp.*, No. 14-CV-587-JDP, 2015 WL 327606, at *2 (W.D. Wis. Jan. 23, 2015); *Mullinix Packages, Inc. v. Anchor Packaging, Inc.*, No. 1:13-CV-316, 2014 WL 856371, at *2 (N.D. Ind. Mar. 5, 2014).  As the Seventh Circuit indicated in *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, the Federal Circuit interprets the first-to-file rule more strictly in patent cases because they present a unique set of concerns that are not present in other non-patent cases.  626 F.3d 973, 981–82 (7th Cir. 2010).  On the other hand, Seventh Circuit precedent is clear.  When the declaratory judgment action is filed in anticipation of the coercive suit, the coercive suit should proceed, even if filed second.  *See Tempco*, 819 F.2d at 749. Foremost, therefore, fails to show why the Court should look to the Section 1404(a) factors or any other factors beyond whether or not this suit is an improper anticipatory filing.

Foremost's reliance on *Research Automation* is equally misplaced.  In *Research Automation*, the Court was considering and ruling on a motion to transfer venue under 28 U.S.C. § 1404(a). *See* 626 F.3d at 976.  Here, DFA does not move to transfer this matter to the District of Kansas under Section 1404(a).  Rather, DFA moves the Court to dismiss this matter as an improper anticipatory filing so it can proceed in the forum of its choice as the proper plaintiff.  The District Court in *Research Automation* did not even reach the anticipatory filing issue because it found that the transfer analysis under 28 U.S.C. § 1404(a) provided grounds to transfer.  *Id.* at 979. Thus, *Research Automation*, like other cases cited by Foremost, stands for the unremarkable proposition that Section 1404(a) factors are relevant in deciding a *motion to transfer.  See OMC LLC*, 2017 WL 3484964, at *4 n. 3 (weighing cases cited by Plaintiff and finding that they do

6

602677020.7

not require consideration of the Section 1404(a) factors when dismissing an improper anticipatory filing). *Research Automation*, therefore, does not require consideration of the Section 1404(a) factors because there is no motion to transfer before the Court.

*Research Automation* is also distinguishable from this case because both parties there had brought breach-of-contract actions against one another and both parties sought coercive relief. 626 F.3d at 975. The claims actually were mirror images. Here, Foremost seeks a declaration that its obligations under the contracts at issue were excused under the *force majeure* clause, or the doctrines of impossibility or impracticability. By contrast, DFA brought a case for breach of contract seeking money damages in the District of Kansas, and Foremost will presumably raise its same defenses there. Foremost seems to acknowledge that it does not seek coercive relief in this case. In fact, the *Research Automation* court expressly discussed application of the first-to-file rule and noted that the Seventh Circuit "ordinarily give[s] priority to the coercive action, regardless of which case was filed first." *Id.* at 980. This action involves only declaratory relief and raises one single defensive issue in the parties' broader dispute, as contrasted with DFA's case for full coercive relief, which will resolve the parties' entire dispute. These are precisely the circumstances the *Research Automation* court indicated would give priority to a coercive action like DFA's in Kansas. *Research Automation*, therefore, does not support Foremost's suggestion that the Court should consider the factors for a motion to transfer under Section 1404(a).

## II. IN ANY EVENT, THE FACTORS UNDER 28 U.S.C. § 1404(a) SHOW THAT DFA'S COERCIVE ACTION IN KANSAS IS THE PROPER FORUM.

When a party is subject to personal jurisdiction in another court, as Foremost is in the Kansas action, this Court's analysis of whether to transfer venue is limited to (1) convenience of the parties; (2) convenience of witnesses; and (3) the interests of justice, including the plaintiff's choice of forum. *Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*, No. 05-C-104-S, 2005 WL 1181952, at *2 (W.D. Wis. May 18, 2005).

Here, these factors (which properly should be assessed by the District of Kansas, not this Court) do not provide any basis for denying DFA's motion to dismiss.

### A. Convenience of the Parties Supports Allowing this Action to Proceed in Kansas Because DFA Is the Natural Plaintiff and Its Chosen Forum Is the District of Kansas.

Convenience of the parties does not prohibit dismissal of this matter because DFA is the true plaintiff and its chosen forum is the District of Kansas. When weighing the convenience of the parties, the Court will look to the plaintiff's chosen forum, among other factors. *Ellis v. T-H Prof'l & Med. Collections, Ltd.*, No. 120CV00828JMSTAB, 2020 WL 4673258, at *3 (S.D. Ind. Aug. 12, 2020). The plaintiff's decision to bring an action in its home forum is usually given considerable deference. *Id.*

Here, DFA is the proper plaintiff in this lawsuit and its decision to bring an action in the District of Kansas, its home state, should receive considerable deference.[1] As explained above, Foremost brings an action for declaratory relief that raises but one defensive issue (whether the pandemic excused its performance) and does not seek any coercive relief. Further, the undisputed facts in this matter demonstrate that Foremost was aware of DFA's threats to bring litigation, made inaccurate statements to DFA indicating it did not intend to file suit, and then brought this suit anyway. Foremost's misleading statements suggest an intent to discourage DFA from filing its action earlier, or delay DFA's filing, merely so Foremost could jump the gun, file the present suit, and attempt to deprive DFA of its chosen forum. DFA is the true plaintiff and its choice of forum should receive deference.

---

[1] Foremost suggests that DFA's interest in bringing its claims in its home state of Kansas is somehow weaker because it moved its headquarters from Missouri to Kansas "only relatively recently": three years ago in 2017. (Dkt. 10 at 14.) Foremost cites no caselaw supporting the proposition that a recently-relocated headquarters—let alone a headquarters that moved *three years* ago—purportedly has any bearing on a plaintiff's interest in bringing suit in its home state, or that such "recent" relocation otherwise justifies depriving DFA as the proper plaintiff its choice of forum.

To convince this Court that this action is proper, Foremost attempts to cast itself as the "natural" plaintiff by pointing to its burden of proof. Foremost's "claims" for impracticability, frustration of purpose, and application of the *force majeure* clause, however, are all affirmative *defenses* to DFA's breach of contract claim, not standalone causes of action. *See Oregon Potato Co. v. Kerry Inc.*, No. 20-CV-92-JDP, 2020 WL 4586401, at *3 (W.D. Wis. Aug. 10, 2020) (discussing force majeure, impossibility, and impracticability as defenses to a breach of contract claim); *see generally* Fed. R. Civ. P. 8(c)(1). Just because Foremost bears the burden of proof on the affirmative defenses it seeks to raise—in response to breach-of-contract claims asserted by DFA—does not mean that Foremost is, or ever could be, the proper plaintiff in this dispute. Indeed, *Foremost cites not a single case or any other source or authority whatsoever* for the notion that asserting an affirmative *defense* could somehow render it the "true plaintiff."

**B.   Convenience of Witnesses Does Not Weigh Heavily in Favor of Either Venue, Meaning Foremost Should Not Be Able to Deprive DFA, the Plaintiff, of Its Chosen Forum.**

The convenience of witnesses is not a significant factor because no matter where this case is heard, a party and their witnesses might potentially be somewhat inconvenienced. Courts have recognized that advancements in technology have diminished concerns regarding the ease of access of proof and cost of obtaining attendance of witnesses. *Milwaukee Electrol Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wisc. 2005). Instead, the main concern is whether witnesses are outside of the parties' control and whether those witnesses need to be compelled to provide testimony. *See id.*

Here, Foremost makes no mention of whether any of the witnesses it identifies would be available to come to Kansas to provide testimony for their employer or whether their testimony could easily be obtained by deposition. Foremost identifies a single witness, Ralph Briggs, who it says is a former employee and adds that "compulsory process *may* be necessary to procure his

9

testimony." (Dkt. 10 at 14 (emphasis added).)  Foremost fails to address whether Mr. Briggs' testimony could be obtained by deposition and fails to even argue, much less demonstrate, that Mr. Briggs *is* unwilling to come to trial or that the use of compulsory process *would* be necessary.  Furthermore, Foremost concedes that compulsory process, if necessary, is available to secure Briggs' testimony; Foremost does not contend that this is a situation in which a witness cannot be compelled to give testimony because he is outside the subpoena power of the court.  The mere suggestion that coming to trial might possibly be inconvenient for a single witness falls far short of showing an inconvenience to witnesses, and falls far short of justifying Foremost's procedural gamesmanship and attempt to deprive DFA of its chosen forum.

Moreover, merely shifting the inconvenience from one party to the other is not a sufficient reason to keep Foremost's improper anticipatory lawsuit alive.  Foremost fails to acknowledge that DFA's breach-of-contract action is certain to require proof on more issues than just Foremost's defenses.  For example, DFA will be introducing evidence regarding the damages caused by Foremost's breach.  The likely witnesses on this subject, namely members of DFA's Central Area Management team and Accounting and Finance teams, are located at DFA's headquarters in Kansas City, Kansas. (*See* Declaration of Joseph Brinker, ¶¶ 4–5, filed as Exhibit B.)  Further, DFA will require the testimony of Joseph Brinker (who works and resides in the Kansas City area) because he participated in the negotiation, drafting, and signing of two of the three contracts at issue in this case. (*Id.*, ¶¶ 2–3.)  Given that many of DFA's witnesses reside in Kansas, the convenience of witnesses does not weigh in favor of depriving DFA of its chosen forum in favor of Foremost's.

### C. The Interests of Justice Support Venue in the District of Kansas.

The Court should also consider the interests of justice in determining whether to transfer a matter, including (1) the district in which litigants will receive a faster trial; (2) whether there is

related litigation that may allow consolidation; and (3) the Court's familiarity with the applicable state law in a diversity action. *Essociate v. Neverblue Media, Inc.*, No. 11-CV-714-WMC, 2012 WL 12874984, at *3. The Court may also consider the plaintiff's choice of forum. *D & G Inc. v. Supervalu, Inc.*, No. 08-CV-761-SLC, 2009 WL 1110412, at *3 (W.D. Wis. Apr. 24, 2009).

The speed in which either party will receive a trial in this matter does not weigh in favor of either this Court or the District of Kansas. According to statistics compiled as of June 2020 in the "United States District Courts – National Judicial Caseload Profile" and cited by Foremost, the median time from civil case filing to disposition is 8.6 months in the District of Kansas and 7.4 months in the Western District of Wisconsin, and the median time from civil case filing to trial is 30.4 months in the District of Kansas versus 24.3 months in the Western District of Wisconsin. (Dkt. 10-5 at 2-3.) The District of Kansas has 346 cases pending per judge, whereas the Western District of Wisconsin has 709. (*Id.*) The average weighted filings in the District of Kansas is 339 and 578 for the Western District of Wisconsin. (*Id.*) Taken together, these statistics show that court caseload is not materially different between the District of Kansas and the Western District of Wisconsin. There is simply no legitimate basis to believe that either Court would provide any greater or lesser venue for resolution of this dispute. (*See id.*) Thus, purported court congestion is not a valid reason to save Foremost's anticipatory filing from dismissal.

The District of Kansas, however, is a superior forum to hear this matter because there is already an action pending there for DFA's breach-of-contract claim. Granting transfer is proper where it would take advantage of a judge's familiarity with the issues, save judicial time and resources and prevent duplicative litigation. *See Essociate*, 2012 WL 12874984, at *4. Here, dismissing this matter and allowing the District of Kansas to proceed would save time and resources and prevent duplicative litigation. DFA filed its Kansas action asserting breach of

11

contract. Foremost's declaratory judgment claim essentially asks this Court to judge the merits of Foremost's affirmative defenses to DFA's breach-of-contract claim. If Foremost does not prevail on those requested declarations, that would not end the matter; DFA would still be required to prove its breach-of-contract claims and damages, and thus more litigation would be necessary. It is more efficient to handle all of those issues (both DFA's affirmative claims and Foremost's purported defenses) at once, together, in the District of Kansas, where Foremost will presumably raise its defenses to DFA's breach-of-contract claims.

Finally, this Court's familiarity with Wisconsin law should not save Foremost's anticipatory lawsuit from dismissal. Foremost has not identified any applicable conflict of law or complex legal issue that would benefit from this Court's familiarity. While Foremost spends a significant amount of time discussing which law applies in this action, it does not discuss whether there is any conflict of law. In fact, the contracts at issue are contracts for goods (namely, milk) and Missouri, Kansas, and Wisconsin have adopted the Uniform Commercial Code. *See* Mo Rev. Stat § 401.1101, *et seq*; K.S.A. § 84-1-101, *et seq*.; Wis. Stat. § 401.101, *et seq*. Further, the District of Kansas may actually be better equipped to address questions of Missouri law (which expressly governs one of the three contracts at issue in DFA's breach-of-contract claim, *see* Dkt. 1-5 at 9, ¶ 19(f) ("This Agreement and its application shall be governed by applicable laws of the State of Missouri, without regard to its choice of law provisions.")), given the proximity of that Court to the state of Missouri and the numerous occasions in which it has interpreted Missouri law. *See, e.g., Aspen Square, Inc. v. Am. Automobile Ins. Co.*, No. 2:18-CV-02255-JAR-JPO, 2019 WL 1115261, at *5 (D. Kan. Mar. 11, 2019).

Respecting DFA's choice of forum as the true plaintiff in this matter and the interests of justice support dismissing this matter and allowing the District of Kansas to proceed in hearing and resolving DFA's breach-of-contract lawsuit.

12

## IV.  IF FOREMOST'S ACTION IS DISMISSED, IT WILL HAVE LOST THIS ACTION, AND DFA SHOULD BE AWARDED ITS ATTORNEY'S FEES.

If this Court grants DFA's motion to dismiss, DFA requests that it be awarded its attorney's fees in defending against this action as provided in the parties' agreement. Foremost argues against such result by attempting to read terms into the fee-shifting provision that are not present.

Specifically, Foremost contends that DFA must win on the full "merits" of the parties' dispute before fees may shift. But that is not what the fee-shifting provision says. It says if "either party commences *an action* against the other to enforce any of the terms hereof or because of the breach by either party of any of the terms hereof, the *losing party* or defaulting party shall pay to the prevailing party the costs and expenses incurred in connection with the prosecution or defense of such action, including accountants' fees and reasonable attorneys' fees." (Dkt. 1-5 at 9 [¶ 19(k)].)  Here, no one disputes Foremost has commenced "an action." If Foremost's action is dismissed, it is unclear how Foremost could be considered anything other than the "losing party" and DFA the "prevailing party" in this action. The provision does not, as Foremost suggests, say that a party must lose the action "on the merits," and it does not exclude "dismissal" from the various types of "losses" that would trigger fee-shifting. Further, in the event of dismissal, shifting fees would appropriately vindicate one of the purposes of contractual fee-shifting provisions:  to make a successful party whole if it has had to defend an action that is unsuccessful.

Should the Court agree that DFA is entitled to its attorney's fees, DFA reiterates its prior request that it be permitted to submit a fee petition that itemizes the reasonable fees incurred in defending against this action.

13

## CONCLUSION

For the reasons presented in DFA's motion and this reply brief, DFA respectfully requests that the Court dismiss Foremost's Complaint, and award DFA the attorney's fees incurred in responding to this action.

Dated: Nov. 20, 2020

                                            **BRYAN CAVE LEIGHTON PAISNER LLP**

                                            By: /s/ Christian Poland

                                                Christian Poland
                                                161 North Clark Street, Suite 4300
                                                Chicago, IL 60601-3315
                                                312-602-5000
                                                christian.poland@bclplaw.com

                                                    and

                                                Robert J. Hoffman
                                                Timothy J. Davis
                                                1200 Main Street, Suite 3800
                                                Kansas City, MO 64105
                                                816-374-3241
                                                rjhoffman@bclplaw.com
                                                tim.davis@bclplaw.com

                                                *Attorneys for Defendant Dairy Farmers of America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 20, 2020, the foregoing was filed with the Court's electronic filing system, which sent electronic notice of this filing to the following counsel of record:

Ted A. Wisnefski
Thomas A. Agnello
MICHAEL BEST & FRIEDRICH LLP
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
Phone: 414-271-6560
tawisnefski@michaelbest.com
taagnello@michaelbest.com

Attorneys for Foremost Farms USA, Cooperative

/s/ Christian Poland
Counsel for Dairy Farmers of America, Inc.